## Case No. 1,099a.

### In re BATES et al.

[Betts' Scr. Bk. 574.]

District Court, D. South Carolina. Sept. 10, 1858.

CRIMINAL LAW—COMMITMENT—PRELIMINARY EXAMINATION.

[1. The crew of a brig were committed for piracy in engaging in the slave trade in violation if Act May 15, 1820, (3 Stat. 600,) c. 113, §§ 4, 5, upon a warrant issued on the affidavit of an officer of a United States vessel that his vessel had taken possession of the brig, and on examination had found her to be a slaver, having on board 300 Africans, with a crew composed of the persons charged. Held, on habeas corpus proceedings, that probable cause was shown for the issue of the warrant.]

[2. Stat. 1 & 2 P. & M. c. 13, and 2 & 3 P. & M. c. 10, in force in South Carolina prior to 1839, provided that, when a party accused was admitted to bail or committed, the officer before whom he was brought, previous to committing him, should take his examination and information of those that brought him, of the facts and circumstances, and the same, or so much thereof as was material to prove the felony, should be put in writing, etc. An act of South Carolina passed in 1839, concerning the office and duties of magistrates, provided, in section 9, that "it shall not be necessary for any magistrate, when any prisoner is produced before him for commitment to bail on a charge of felony, to examine such prisoner and those who bring him, as heretofore prescribed by law." Held that, notwithstanding section 10 provides that the "magistrate may take the examination of any witness on behalf of the state in the presence of the prisoner, allowing the prisoner the right of cross-examination," this act repeals the prior statute, and a commitment may be valid without any examination of prisoner or state witnesses.]

[3. The constitutional rights of the prisoner to be confronted by the witnesses against him, and to be represented by counsel, have reference to the trial only, and are not infringed by proceedings before the committing magistrate.]

[4. A commitment for further examination is valid, as well as a commitment for trial; and persons so committed under a valid warrant are not entitled to a discharge on habeas corpus, where the detention has lasted only 12 days, for it cannot be said that that is an unreasonable time for the purpose.]

[At law. On habeas corpus. Motion of R. T. Bates and others to be discharged from custody. Motion denied.]

MAGRATH, District Judge. In the matter of R. T. Bates and others. The return of the marshal of the United States for this district to the writ of habeas corpus, ordered to issue in this case, sets forth that the petitioners in whose behalf the writ has been issued, were taken, and are detained in custody by him as marshal, in the jail of Charleston district, for further examination on a charge of piracy, in violation of the 4th and 5th sections of the act of congress approved May 15, 1820, [3 Stat. 600, c. 113,] by virtue of warrants and commitments issued on 28th August, 1858, under the hand and seal of Robert C. Gilchrist, a commissioner of the United States for the district of South Carolina. The return then sets forth the warrant, which is directed to the marshal, requiring him to convey and deliver into custody of the keeper of the jail the bodies of said parties, charged before the commissioner on the oath of Lieut. Joseph M. Bradford, U. S. navy, with being of the crew or ship's company of the brig Echo, engaged in the slave trade, in violation of the act of 1820, [3 Stat. 600,] c. 113, §§ 4, 5. And the keeper of the jail is directed to receive the said parties into his custody in the jail, and them there safely keep for further examination. A motion is now made to discharge these prisoners; and the various grounds upon which this motion was urged, may be considered under two general propositions: 1. That the proceedings on the part of the commissioner were irregular and insufficient to justify a commitment. 2. That the commitment is, in itself, improper and illegal. These proceedings, it appears, were on affidavit of Joseph M. Bradford, a lieutenant in the U. S. navy, which states that on the —— day of August, 1858, the U. S. brig Dolphin took possession of the brig Echo; that on examination she proved to be a slaver, with a cargo of three hundred and twenty negro slaves on board, a crew of Spaniards and Americans, who gave their names, which are the same as are signed to this petition; and that he, with certain persons named, are material witnesses. The warrant which issued upon this affidavit, commanded the marshal to apprehend the said prisoners, and to bring them before the commissioner, to be dealt with and disposed of

according to law. No return is endorsed on this warrant. Its execution appears only in the commitment already referred to and set forth in the return.

In countries which regard the personal liberty of the citizen, wherever laws have been passed for the suppression of crime and the punishment of offenders, it has been found necessary to provide certain preliminaries, operating as safeguards, which must precede either the arrest or the commitment or both. In the constitution of the United States it is thus provided: that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized, (article 4, Amend. Const.;) and at other stages of the investigation, additional provisions have been made, intended to make the liberty of the citizen secure from unreasonable violation. In Ex parte Bollman, [Case No. 14,622,] it is said, "The cause of issuing a warrant is a crime committed by the person charged. Probable cause, therefore, is a probability that the crime has been committed by that person. Of this probability, the court or magistrate issuing the warrant must be satisfied by facts, supported by oaths or affirmation." The subject matter of the crime alleged in these proceedings is the prosecution of the slave trade. Is there probable cause to believe that the crime has been committed by the persons charged? They are found in a vessel, composing the crew or ship's company, with three hundred Africans on board. This is not conclusive; but at this stage of the criminal procedure, it is not expected to be conclusive. If a prima facie case is made out, it is sufficient. 1 Chit. Crim. Law, 106. The commissioner is to be satisfied of this probable cause before he issues the warrant, and it must be supported by oath or affirmation. In U. S. v. Johns, [Case No. 15,481,] it is laid down that upon a habeas corpus the only enquiry is whether the warrant of commitment states a sufficient probable cause to believe that the person charged has committed the offence. And in this state the law is thus stated by Judge Earle: "It is a great mistake to suppose that a warrant for apprehension, or a warrant of commitment, need contain any statement at all of the evidence on which it is founded, or need enumerate any of the facts and circumstances accompanying the offence." Dud. 300.

It is at the next stage of the proceedings that the objections have been most strongly urged. And the consideration of these objections is not only affected with the responsibility of deciding any question in a case of so much interest and importance; but it is moreover important as involving the direction of the criminal procedure of this court. It is objected that these parties have never been brought before the commissioner, nor examined, nor have the witnesses against them been examined in their presence, nor

they allowed the cross-examination of their witnesses. That their commitment in the absence of these prerequisites and without the benefit of counsel, involves a denial of their constitutional and legal rights, and affects the whole proceedings subsequent to the arrest with such gross irregularity, that the commitment must be set aside. In the United States there is no law by which an established mode of criminal procedure is provided, and an uniform system of practice pursued. In the criminal as in the civil administration of justice, legislation, as far as it has gone, has professed to assimilate in each state the practice of the courts of the United States with that of the highest courts of law in that state. The act approved 24th September, 1789, c. 20, § 33, in cases of crime provides that "the offender may, by any justice or judge of the United States, or by any justice of the peace or other magistrates of any of the United States, where he may be found, agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States, as by this act has cognizance of the offence." 1 Stat. 91. By this act, if the proceedings are in the hands of an officer of the United States, he must conduct them agreeably to the usual mode of process against offenders in such state. And by the act of 23d August, 1842, (5 Stat. 516,) commissioners of the United States to take acknowledgments of bail and affidavits, and also to take depositions of witnesses in civil causes, shall and may exercise all the powers that any justice of the peace, or other magistrate of any of the United States, may now exercise in respect to offenders for any crime or offence against the United States, by arresting, imprisoning or bailing, under and by virtue of the 33d section of the act of 1789.

Previous to the act of assembly of the state of South Carolina, in 1839, the statute of 1 & 2 P. & M. c. 13, and 2 & 3 P. & M. c. 10, were among the English statutes retained in force after the Revolution; and their provisions governed the proceedings in criminal cases. By these statutes, when a party accused was admitted to bail, or committed, the parties before whom he was brought, previous to a commitment, were commanded to take his examination and information of those that bring him, of the fact and circumstance, and the same, or so much thereof as shall be material to prove the felony, shall be put in writing within two days after the said examination, and the justices shall certify the same. 1 Chit. Crim. Law. 74. It is true that it has been said, under this act, the accused may decline to testify; but it is also said that, in cases of felony, the examination of the accused must be taken. 1 Chit. Crim. Law. 83. And although it is declared to be a privilege operating in favor of the party accused, it may well be doubted how far that

is the object accomplished, when we remember that by its provisions in certain cases these depositions may be given in evidence at the trial of the accused. How far the security of the accused was promoted by the statutes may be questioned, when, while it was professed to confront the accused and the witnesses, and allow the benefit of cross-examination, in practice the right of counsel for the accused to be present as a matter of right was denied, and at first not even the cross-examination was allowed to be under oath. This was an innovation upon the rule of the common law, that no one could be forced to criminate himself, a principle adopted in all its force in that provision of the constitution of the United States which declares that no one "shall be compelled in any criminal case to be a witness against himself." Article 5, Amend. Const. These statutes may have secured the production, before commitment, of all the evidence which could be produced against the accused; but, in my judgment, that privilege was secured to him at the expense of others far more important. Be that, however, as it may, these statutes, until 1839, furnished a rule for criminal proceedings in South Carolina. By the act of the general assembly of the state of South Carolina, entitled "An act concerning the office and duties of magistrates," and passed in that year, it is in the 4th section provided, that when complaint on oath shall be made before a magistrate that a felony or misdemeanor has been committed, or that the informant has good reason to believe and does verily believe the same, or when such magistrate is reasonably satisfied thereof, he is required, under his hand and seal, to issue his warrant against the party charged, directed to any lawful officer within the state, wherein shall be plainly expressed the offence charged, and supposed time of commission, commanding him to arrest and bring such offender before himself or next magistrate, to be further dealt with as the law may direct; and in the 9th section it is provided that it shall not be necessary for any magistrate, when any prisoner is produced before him for commitment or bail, on a charge of felony, to examine such prisoner and those who bring him, as heretofore prescribed by law. Such magistrate may take the examination of any witness in behalf of the state, in the presence of such prisoner, allowing such prisoner the right of cross-examination, and reduce the testimony so taken to writing, read the same over to the witness and require him to subscribe; and the magistrate shall return the testimony so taken to the office of the clerk.

The counsel for the accused truly stated the point in this matter when they addressed themselves to the question whether the act of 1839 was a repeal of the statutes of Philip & Mary, and insisted that this act was the repeal of those statutes only so far as the examination of the accused was concerned, but

that it virtually re-enacted the provisions of the statutes of Philip & Mary in relation to witnesses. I cannot so consider it in a case of felony. Indeed, the mode of proceeding directed in the 4th and 9th sections seems plainly intended, and is so expressed to be the change for that "heretofore prescribed by law," and which was the mode provided in the statutes of Philip & Mary; the 4th section of the act of 1839 requiring the magistrate to have the offender dealt with according to law, and the 9th section making it not necessary to examine the party produced for commitment. Indeed, there cannot be a doubt, so far as the examination of the accused is concerned, that the act of 1839 repealed the statutes previously in force. But is the provision of the statute of Philip & Mary changed as to the examination of witnesses? That is, must the witness be examined in the presence of the prisoner, with the right to cross-examine, before the accused can be committed? This seems to me to be equally plain, and' the act appears to me also to express its manifest intention in relation to the witnesses to substitute that rule which it sets out, for that "heretofore prescribed by law."

The statutes of Philip & Mary are mandatory; they command the justice, "before he (or they) shall commit," "shall take examination of each prisoner and information of those that bring him." The act of 1839 directs that the warrant so issued, as already described, "shall authorize the arrest and detention of any person so charged," and that the magistrate before whom the prisoner is produced for commitment shall not hold it necessary to examine "such prisoner and those that bring him, as heretofore prescribed by law." It is true in the 10th section it is said, "The magistrate may take the examination of any witness in behalf of the state," and it has been argued with great zeal that "may," in this section, should be read as if written "must" or "shall." This is the rule where a statute directs the doing of a thing for the sake of justice; the word "may," in such cases, means the same thing as "shall." Dwar. St. 712. But the principle of the rule so stated has no application here. For what was formerly prescribed by law, that which, as has been seen, in the statute of Philip & Mary, it was said that the magistrate "shall" do, is the same thing which the act of 1839 declares it shall not be necessary for him to do. And the authority given in the latter part of the section, that the magistrate may take the examination of any witness in behalf of the state, provided it is done in the presence of a prisoner, is neither the re-enactment of the positive command of the statutes of Philip & Mary to take that examination, nor a qualification of the positive declaration in the first paragraph that such an examination, although formerly necessary, shall no longer be so. How far that examination of the witnesses

permitted by the act of 1839 can make the deposition, so taken, competent evidence at the trial of the accused, I will not now discuss farther than to say that to be confronted with the witness at the trial of the case seems to me the constitutional right of the accused. 3 Story, Comm. § 1785. I have to regret that no adjudged case in the courts of this state has settled the construction of this section of the act of 1839. Had there been any such case it would have been our duty to have adopted its construction, and so to enforce it, unless there shall be special legislation by congress. In the absence of any construction by the courts of the state, I have been obliged to give it that construction which, to me, seemed not only proper, but in fact the only construction which could be given to it consistently with the admonition that judges "ought not to make any construction against the express letter of the statute, for nothing can so express the meaning of the makers of the act as their own direct words." Dwar. St. 725; 5 Rep. 118. And I feel more confidence in the opinion that the 4th and 5th sections of the act of 1839 repeal the statutes of Philip & Mary, and furnish a rule of procedure in themselves in all criminal proceedings, from the fact that such was the received opinion while I was at the bar; nor do I know of any case in the courts of the state where the practice did not conform to the construction which I have given. If this construction were exposed justly to the objection that by it the accused was not confronted with the witnesses against him, and had not the assistance of counsel for his defence, it would be inconsistent with the guaranty of the constitution in these particulars; and the provision, therefore, if rightly construed, would be void, because it would tend to impair a constitutional right. But it should be remembered, in the language of Judge Marshall, that, "before the accused is put upon his trial, all the proceedings are ex parte." [Ex parte Bollman,] 4 Cranch, [8 U. S.] 129. That these constitutional rights, which are supposed to be invaded by this construction, are rights which are not contemplated by the constitution in connection with preliminary proceedings; that the privilege of confronting the witness is a privilege which pertains to the trial in court; that it does not extend to all periods in the proceeding, is manifest in the fact that it cannot be claimed before the grand jury: a period, when, if allowed, it would be far more available for the accused than in the preliminary proceedings before the magistrate. And that the right to have the assistance of counsel is not invaded, since, if the statutes of Philip & Mary were in force, it is beyond dispute that, in proceedings under them, the accused was not entitled to the benefit of counsel as a matter of right. 3 Story, Comm. §§ 1785, 1786; 3 Cranch, C. C. 377, note 1. [Robinson v. Cathcart, Case No. 11,947.] That course of proceeding, then, which is usual in the

state, under this act of 1839, is the proper course to be pursued by the commissioner of the United States. "My opinion (says Judge Curtis) is that it was the intention of congress by these words, agreeably to the usual mode of process against offenders · in such state, to assimilate all the proceedings for holding accused persons to answer before a court of the United States, to proceedings had for similar purposes by the laws of the state where the proceedings should take place." U. S. v. Rundlett, [Case No. 16,208.] If anything were wanting in confirmation of what I have said it will be found in the 14th section of the same act, (1839,) in which any magistrate of the state may order arrest, imprisonment or bail of a person, charged with a crime or offence against the United States, alleged to have been committed within this state, at the expense of the United States, and to be tried in the courts thereof, according to the established forms of proceeding for offences against this state.

But it is said the commitment or detention for further examination is improper. Is it unlawful? The 4th section of the act of 1839 directs the accused to be arrested and brought before the magistrate, to be dealt with as the law directs. And in this case, the detention of the accused has been ordered for further examination. Now, it will be observed that the act of 1839 does not forbid any examination; it only provides that it shall not be necessary before commitment. There may be, as in this case, a number of persons accused; it may become a matter of duty for the magistrate to examine, and ascertain whether they are all equally guilty, and whether they shall all be committed for the same offense. Nor can I understand why, in this case, the accused complain of a commitment for further examination. If the warrant contains probable cause for commitment, and rests upon an oath for its support, the magistrate may commit for trial, or for further examination. But the commitment for further examination is not regarded as a proceeding of which the accused can complain, unless it is abused. "If (says Lord Eldon, in the house of lords) I understand the law upon the subject, a commitment for further examination is not a proceeding against the party, but a proceeding for his benefit. It is a proceeding with a view to protect him against a commitment for trial, if * * * it can be found that there is no ground upon which there ought to be a commitment for custody in order to trial." 3 Dow, 184. And where it appears that a party is detained, even without a warrant, for further examination, Abbott, C. J., expressed a doubt whether habeas corpus would be issued where the accused was held for further examination, and refused a discharge. Ex parte Krans, 8 E. C. L. 110. It was said in the argument that this detention was in jail. But it was overlooked that a detention elsewhere than in jail would not be lawful; for thereby the accused might be deprived of the benefit of the jail delivery. 1 Chit. Crim. Law, 73. I readily concede that commitment for further examination must not be so used as to operate in place of a commitment for trial; and this, or any other abuse of the power of the magistrate, will be corrected. The court will not only relieve, but the party will have his action against the magistrate. Is there in this case any evidence of an abuse by the commissioner of his authority? The arrest is said to have been made on the 28th August, and the accused from that day until the present time are held under a commitment for further examination. In the examinations under the statutes of Philip & Mary, it is laid down that there is no precise limitation of the time, which must depend upon the circumstances of each particular case; there are many instances, it is said, of prisoners being detained more than twenty days between their first being brought before a justice and their commitment for trial. 1 Chit. Crim. Law, 73. I am not to presume that the delay which has taken place is unreasonable; and if it were, and had continued so long as to induce me to think that the original cause of it could not be valid, or worthy of further investigation, I might discharge the accused, (8 E. C. L. 112,) or relieve them upon adequate security being given for their appearance, (1 Chit. Crim. Law, 130.) But within that period of time, which elsewhere, and for the purposes of an examination, has been held not unreasonable, I could not undertake to say that the delay which in this case has taken place is unreasonable.

It is true that the offense charged in the warrant is a felony, and is therefore excepted specially in 31 Car. II., c. 2; but in such case the common law gave relief. And in the constitution of the United States, the provision is broadly declared, "that the privilege of habeas corpus shall not be suspended unless when in cases of rebellion or invasion, the public safety may require it." Article 1, § 9. For whatever cause he may be imprisoned, one who is entitled to the writ may obtain it. But its end is not to assert an exemption from all imprisonment, which would be inconsistent with every idea of law and political society, (3 Bl. Comm. 132, Wendell,) but to relieve from "a confinement without lawful warrant, without legal cause, on vague, indefinite and uncertain charges," (Dud. 299.) If anything had been wanting in this case to secure for it my careful consideration, it would have been found in the zeal with which the motion for the discharge of the prisoners was urged. I do not see any ground upon which I could rest that exercise of the power with which I am vested. The motion, therefore, is refused.