J-A12009-15

2015 PA Super 153

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID EDWARD RICKER | |
| Appellant | No. 1693 MDA 2014 |

Appeal from the Order Entered October 1, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003601-2014

BEFORE: BOWES, DONOHUE AND ALLEN, JJ.

OPINION BY BOWES, J.:                    **FILED JULY 17, 2015**

David Edward Ricker appeals from the October 1, 2014 order denying his pre-trial writ of *habeas corpus*. We affirm.

The Commonwealth charged Appellant with attempted murder, assault of a law enforcement officer, and aggravated assault after he exchanged gunfire with a Pennsylvania State Police trooper at Appellant's residence. Specifically, Trooper Michael Trotta had responded to a dispatch regarding loud and fast driving on Green Hill Road in West Hanover Township. Trooper Trotta drove the length of that road and, after turning around, observed a small group of people standing by the roadway at the end of a driveway. The trooper pulled over and the group directed him to a damaged mailbox and a lawn ornament sign which had been run over by a light colored pickup

truck. The group informed Trooper Trotta that they knew the individual who struck the mailbox because he was their neighbor. They directed Trooper Trotta to Appellant's driveway.

Trooper Trotta then appeared at the entrance of Appellant's gated driveway in full uniform in an unmarked patrol car. The driveway was approximately 100 yards long. Trooper Trotta pressed a call button at the bottom of the driveway and saw a sport utility vehicle come to the top of the driveway. Appellant's wife exited that vehicle and walked down to the gate. She initially refused to permit Trooper Trotta to enter. According to Trooper Trotta, Appellant's wife indicated that her husband was drunk and carried a gun. Ultimately, however, Appellant's wife opened the gate and waved Trooper Trotta past her. He then drove his car to the top of the driveway.

Trooper Trotta saw Appellant walk towards his vehicle with a large German Shepard. The trooper initially remained in his car. Trooper Trotta told Appellant that his neighbors had reported that he sideswiped their mailbox. Appellant became irate and belligerent at that point, and the trooper was able to discern that Appellant's eyes were bloodshot and his breath smelled of an alcoholic beverage. Appellant demanded, in a profanity laced manner, that Trooper Trotta get off his property. Appellant's wife then raised her voice at her husband, who struck his wife and threw her to the side. Trooper Trotta asked Mrs. Ricker to take the dog and go inside, and he attempted to exit his car. Appellant slammed the car door shut. Trooper

Trotta also had drawn his taser. Appellant reached inside the car and attempted to take the taser from the trooper. Appellant's wife again interceded, but Appellant continued to direct the trooper to leave. After Trooper Trotta exited his vehicle, he saw Appellant remove a small gun from the back of his pants. Appellant informed the officer that he had a permit to carry and told Trooper Trotta to "get the fuck off my property." Exhibit 1, 7/10/14, at 8.

Trooper Trotta drew his own weapon and instructed Appellant's wife to move away and go inside the house. Instead, she stepped in front of her husband. Trooper Trotta called for backup and Appellant continued to wave his firearm. Appellant then began to walk toward his home. Trooper Trotta told him that he was under arrest and followed him. Appellant entered an open three-car garage bay. Soon thereafter, a young female child exited the home. Trooper Trotta directed her to go to her mother's car away from the area. By this time, another trooper, Trooper Dana Gingerich, had arrived and was in the vicinity of that car.

Trooper Trotta next went around the front of the house while Trooper Gingerich advised the police barracks to send a specialized unit similar to a SWAT team. Trooper Trotta heard Trooper Gingerich yell to Appellant to come out and let him see Appellant's hands. Accordingly, Trooper Trotta ran toward the yelling and came back to the garage bay. At this point, he saw Appellant holding an assault rifle in his right hand and peering around the

garage door toward Trooper Gingerich. Trooper Trotta demanded that Appellant drop the weapon. According to Trooper Trotta, Appellant then grabbed the front part of the rifle and began to level it at him. At that point, Trooper Trotta opened fire, striking Appellant twice. Appellant hit the ground and returned fire, hitting the trooper multiple times.

The case proceeded to a preliminary hearing. Trooper Trotta did not testify nor did Trooper Gingerich. Instead, the lead investigator into the incident, Trooper Douglas Kelley, testified regarding his investigation, and played for the magisterial district court a tape of an interview with Trooper Trotta. That tape outlined the facts set forth above. Appellant objected to the use of the hearsay evidence and also requested a continuance to call Troopers Trotta and Gingerich on his behalf. The court overruled the objection, declined to continue the matter, and bound the case over for trial. Appellant then filed a pre-trial writ of *habeas corpus*. Therein, Appellant argued that it was improper to find a *prima facie* case against him based entirely on hearsay evidence. The trial court denied the writ without a hearing or the presentation of argument. This appeal ensued.

The trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. That same date, this Court issued a rule to show cause why the appeal should not be quashed as an interlocutory appeal. Appellant responded, and the issue was deferred to this panel. The trial court also filed its Rule 1925(a) decision. The matter is

- 4 -

now ready for our consideration. Appellant presents three issues for our review.

A. Whether the court should hear this interlocutory appeal from the denial of Appellant's habeas corpus petition under the "exceptional" or extraordinary" circumstances exception to the general rule because it entails a matter of great public interest, e.g., whether hearsay evidence alone may prove a prima facie case at a preliminary hearing, an issue which is likely to evade review because appellate review would not normally occur until the criminal case was finally resolved?

B. Whether the Commonwealth may prove a prima facie case at the preliminary hearing exclusively through hearsay evidence, which is what the trial and magisterial district courts concluded in Appellant's case?

C. Whether Pa.R.Crim.P. 543(e), which provides that hearsay evidence shall be sufficient to establish any element of an offense, violates the state and federal constitutional confrontation rights of defendants, including Appellant, as well as long-standing Pennsylvania and U.S. Supreme Court precedent?

Appellant's brief at 5.

Preliminarily, we must determine whether we have jurisdiction over this interlocutory appeal. Generally, the denial of a pre-trial writ of *habeas corpus* based on a lack of sufficient *prima facie* evidence does not constitute an appealable order. **Commonwealth v. Hess**, 414 A.2d 1043, 1047-1048 (Pa. 1980); **see also Commonwealth v. Jackson**, 849 A.2d 1254 (Pa.Super. 2004). Where exceptional circumstances exist, an appeal from such an interlocutory order may be considered. **Hess**, **supra** at 1047-1048 ("Although it has been deemed appropriate to permit immediate review by

the court of common pleas of the finding of a prima facie case by the district magistrate, a balancing of the further disruption of the trial process against the harm to the accused weighs in favor of barring immediate appellate review unless 'exceptional circumstances' are present.").

Appellant argues that exceptional circumstances are present. First, he notes that, should he be acquitted or convicted, the issue of whether hearsay evidence alone may establish a *prima facie* case at a preliminary hearing would become moot. Indeed, it is well-settled that errors at a preliminary hearing regarding the sufficiency of the evidence are considered harmless if the defendant is found guilty at trial. ***Commonwealth v. Sanchez***, 82 A.3d 943, 984 (Pa. 2013); ***Commonwealth v. Tyler***, 587 A.2d 326 (Pa.Super. 1991). Thus, Appellant maintains that any challenge to a procedure allowing hearsay evidence alone to establish a *prima facie* case would be capable of repetition and likely to evade review if this Court were to await a final order. Appellant, therefore, suggests that exceptional circumstances exist.

In addition, Appellant submits that this matter involves an issue of great public interest and the safeguarding of basic human rights. ***See Commonwealth v. Bernhardt***, 519 A.2d 417, 419 (Pa.Super. 1986). He contends that whether it is constitutional to hold over a defendant for trial based solely on hearsay evidence after the 2011 addition of Pa.R.Crim.P. 542(E) is an issue of first impression. Pa.R.Crim.P. 542(E) reads,

E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

The Comment to the Rule also provides in pertinent part,

Paragraph (E) was amended in 2013 to reiterate that traditionally our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings, especially with regard to the use of hearsay to establish the elements of a *prima facie* case. *See* the Pennsylvania Rules of Evidence generally, but in particular, Article VIII. Accordingly, hearsay, whether written or oral, may establish the elements of any offense. The presence of witnesses to establish these elements is not required at the preliminary hearing. *But compare Commonwealth ex rel. Buchanan v. Verbonitz,* 525 Pa. 413, 581 A.2d 172 (Pa. 1990) (plurality) (disapproving reliance on hearsay testimony as the sole basis for establishing a prima facie case). *See also* Rule 1003 concerning preliminary hearings in Philadelphia Municipal Court.

Comment to Pa.R.Crim.P. 542.

In Appellant's view, the current procedural rule is unconstitutional because it violates his federal and state confrontation rights. The Commonwealth counters that no extraordinary circumstances exist because Appellant will be afforded an opportunity to confront the witness against him at trial. It maintains that Appellant was required to seek an interlocutory appeal by permission and that this appeal should be quashed.

Initially, we note that exceptional circumstances are not automatically created because an issue is capable of evading review. Indeed, every denial

of a pre-trial *habeas corpus* motion that alleges insufficient evidence results in an inability to review whether the Commonwealth established its *prima facie* case, unless permission to appeal is granted. If the defendant is acquitted, then no review is necessary. Further, if the defendant is found guilty at trial or pleads guilty, then no prejudice exists. Thus, in order to establish exceptional circumstances, more is required than the issue becoming moot. We find that this case presents such a circumstance. Not only is Appellant's claim capable of evading review, it presents an important constitutional question regarding whether a powerful state governmental entity violates federal and state constitutional principles in allowing a defendant to be restrained of his liberty and bound over for trial based solely on hearsay evidence. Accordingly, we hold that, under the precise facts herein, we have jurisdiction to consider the merits of Appellant's substantive claims.

As Appellant's arguments for his second and third issues are intertwined, we consider them together. Appellant begins by pointing out that, after the filing of a criminal complaint or a grand jury presentment, a defendant is entitled by Pennsylvania criminal procedural rule to a preliminary hearing. In order for a case to be held for trial, the Commonwealth is required to make a *prima facie* showing that each element of the crimes charged is present and that the defendant committed the act or acts in question. **Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa.

1991) ("In order to meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense."); **Commonwealth v. Mullen**, 333 A.2d 755, 757 (Pa. 1975) ("[I]t is the burden of the Commonwealth at a preliminary hearing to establish at least *prima facie* that a crime has been committed and the accused is the one who committed it.").[1]

Prior to the promulgation of the applicable version of Rule 542(E), hearsay evidence was admissible at a preliminary hearing, but several cases indicated it could not solely be used to establish a *prima facie* case. **Commonwealth v. Carmody**, 799 A.2d 143, 146 n.2 (Pa.Super. 2002) ("[I]f the hearsay testimony offered at the preliminary hearing is the *only*

---

[1] Pennsylvania courts have used the terms "*prima facie*" and sufficient "probable cause" interchangeably in the context of modern preliminary hearings. **Commonwealth v. Karetny**, 880 A.2d 505, 514 (Pa. 2005) ("A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense."); **Commonwealth v. Huggins**, 836 A.2d 862, 866 (Pa. 2003); **Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa. 1991); **Commonwealth v. Prado**, 393 A.2d 8, 10 (Pa. 1978); **Commonwealth ex rel. Scolio v. Hess**, 27 A.2d 705 (Pa.Super. 1942) (citing the early Pennsylvania federal district court decision in **United States v. Johns**, 4 Dall. 412, 413 (1806)); **but see Stewart v. Abraham**, 275 F.3d 220 (3rd Cir. 2001) (reasoning that the "*prima facie*" and "probable cause" standards in Pennsylvania may not be identical).

basis for establishing a *prima facie* case, it fails to meet the criteria for evidence upon which the preliminary hearing judge may rely."); **Tyler**, **supra** at 328–29.

Appellant argues that this remains the law even considering Rule 542(E). Relying primarily on this Court's footnote in **Carmody**, our opinion in **Tyler**, and our Supreme Court's plurality decision in **Commonwealth ex rel. Buchanan v. Verbonitz**, 581 A.2d 172 (Pa. 1990), Appellant asserts that hearsay evidence alone cannot establish a *prima facie* case. Continuing, Appellant avers that his state and federal confrontation clause rights were infringed at the preliminary hearing because he was unable to cross-examine Trooper Trotta.

Appellant has not alleged that his due process rights were infringed because the magisterial district court violated Rule 542 to the extent it denied him the opportunity to present non-character witnesses. However, he does maintain that the court erred in declining to continue the case to permit him to subpoena Trooper Trotta and Trooper Gingerich. This argument, nevertheless, is undeveloped and was not included in his statement of issues or in his 1925(b) statement of errors complained of on appeal. Therefore, this latter argument is waived.

Appellant acknowledges that the Pennsylvania Supreme Court promulgated the rule in question, but asserts that this fact is not dispositive of whether the rule violates his confrontation rights. He adds that the

comment to the rule even recognizes that the rule is in conflict with the Pennsylvania Supreme Court's plurality decision in *Verbonitz*. In Appellant's view, allowing hearsay evidence alone to establish a *prima facie* case of criminal wrongdoing renders a preliminary hearing "an empty, ceremonial formality in which the judge simply rubber stamps the uncross-examinable testimony of the affiant[.]" Appellant's brief at 40.

The Commonwealth responds that Rule 542(E) permits a magisterial district judge to use hearsay evidence alone to find sufficient *prima facie* evidence of a crime. It adds that the Pennsylvania Supreme Court enacted the rule in question and therefore it should be presumed constitutional. The Commonwealth further highlights that *Verbonitz* was a plurality decision in which only three justices agreed that binding over a defendant for trial based solely on hearsay violated the confrontation clause of the Pennsylvania Constitution. It also points out that the Superior Court decisions cited by Appellant were decided before the recent applicable amendment to Rule 542.

Next, the Commonwealth posits that the court did not rely only on hearsay evidence. It contends that evidence of the victim's wounds, the seizure of marijuana, and Appellant's own statements were also introduced. It submits that it presented testimony regarding the number of firearms seized and that cartridge cases that had been recovered from a weapon discharged at the scene. Finally, the Commonwealth argues that the right to

confront witnesses against oneself is a trial right that does not apply at a preliminary hearing.

We begin first with a determination of whether, in fact, hearsay evidence alone was used to establish the elements of the crimes charged. While the Commonwealth is correct that it introduced non-hearsay evidence at the preliminary hearing, none of that evidence was sufficient to establish the elements of the crimes charged. The seizure of weapons and marijuana was immaterial to the charges. The fact that bullet casings were discovered also is insufficient. Here, the evidence used to meet the material elements of the crimes charged came from the taped statement of Trooper Trotta. Thus, we agree with Appellant that hearsay alone was used to prove a *prima facie* case of attempted murder, aggravated assault against a law enforcement officer, and aggravated assault.

Having resolved that preliminary issue, we proceed to consider whether Rule 542(E) and the use of hearsay evidence alone may establish a *prima facie* case. In **Carmody**, the Commonwealth appealed to this Court after the trial court granted in part the defendant's pre-trial *habeas corpus* motion. Therein, the defendant alleged that the magisterial district court erred in finding a *prima facie* case as to simple assault, harassment, and terroristic threats. Specifically, he averred that the district justice erred in binding over the charges based only on hearsay evidence. The *habeas* court concluded that sufficient evidence existed to establish *prima facie* evidence

of simple assault and harassment. However, it determined that the Commonwealth failed to prove a *prima facie* case of terroristic threats. The hearsay evidence at issue were statements provided by the defendant's girlfriend to police. The girlfriend appeared at the preliminary hearing but recanted her allegations. One of the officers who took a statement then relayed her earlier account.

This Court held that the *habeas* court erred in determining that the girlfriend's prior inconsistent statement was inadmissible hearsay. Since the girlfriend's statement had been reduced to writing and signed, and the parties were able to question her regarding her change in story, we held that the *habeas* court erred. In a footnote, we opined that, while hearsay is admissible at a preliminary hearing, it cannot be the only evidence used to establish a *prima facie* case. The footnote was not necessary to the disposition of the case since the hearsay in question was ultimately determined not to be inadmissible hearsay. Accordingly, the **Carmody** footnote is *dicta*.

That footnote relied on **Tyler**, **supra**. In **Tyler**, police arrested the defendant after he sold crack cocaine to a confidential informant ("CI"). At the preliminary hearing, the CI did not testify. Instead, over objection, the Commonwealth introduced the CI's statement via a police officer. The defendant next requested to call the CI to testify at the hearing. The Commonwealth objected, and the district justice refused to permit the

defendant to call the CI. The defendant filed a writ of *habeas corpus* and a motion to quash the information on the basis that the magistrate erred in using hearsay evidence alone and declining to permit him to question the CI. The trial court denied those motions, and a jury found the defendant guilty of various drug charges.

On appeal, this Court initially ruled that because the jury determined that Tyler was guilty beyond a reasonable doubt, it was immaterial if the Commonwealth did not establish a *prima facie* case at the preliminary hearing. The panel did note that the plurality decision in **Verbonitz** had set forth that a *prima facie* case could not be met by hearsay evidence alone if it would be inadmissible at trial. Nevertheless, it reasoned that **Verbonitz** did not apply because non-hearsay evidence established the *prima facie* case against Tyler, no trial occurred in **Verbonitz**, and, relatedly, Tyler did not appeal after the denial of his *habeas* petition. The **Tyler** panel also cursorily denied Tyler's confrontation clause claim, citing **Pennsylvania v. Ritchie**, 480 U.S. 39 (1987) (plurality), and setting forth that the confrontation right is a trial right. Thus, **Tyler** does not actually support Appellant's hearsay or constitutional positions.

Rule 542(E) is not in conflict with any binding precedent. A plain reading of the rule indicates that it permits hearsay evidence to be considered in determining any material element of a crime. Specifically, the rule provides in relevant part, "**Hearsay** as provided by law **shall be**

**considered** by the issuing authority **in determining whether a *prima facie* case has been established**. **Hearsay evidence shall be sufficient to establish any element of an offense**." Pa.R.Crim.P. 542(E) (emphases added). If hearsay evidence is sufficient to establish one or more elements of the crime, it follows that, under the rule, it is sufficient to meet all of the elements. Accordingly, we find that the rule does allow hearsay evidence alone to establish a *prima facie* case.

This conclusion, nonetheless, does not resolve the case. Appellant also contends that the procedure herein violated his confrontation rights under both the federal and state constitutions. Although **Tyler** summarily denied a similar claim, in light of the United States Supreme Court's statements in **Gerstein v. Pugh**, 420 U.S. 103 (1975), which we will discuss *infra*, and our Supreme Court's plurality decision in **Verbonitz**, we believe a more complete analysis of the claim is warranted.

The Pennsylvania Constitution provides in relevant part that, "In all criminal prosecutions the accused hath a right . . . .to be confronted with the witnesses against him[.]" Pa.Const. Art. I, § 9.[2] Similarly, the Sixth

---

[2] The 1776 Pennsylvania Constitution set forth, in pertinent part, "That in all prosecutions for criminal offences a man hath a right . . . . to be confronted with the witnesses[.]" Pa.Const. Chapt. 1, § 9 (1776). The 1790 Constitution changed the wording slightly to read, "That, in all criminal prosecutions, the accused hath a right . . . . to meet the witnesses face to
*(Footnote Continued Next Page)*

Amendment reads, "In all criminal prosecutions, the accused shall enjoy the right . . . . to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI.

When considering the Pennsylvania Constitution, "'great regard should be paid to spirit and intention' and it is important to examine the 'probable intent of the makers.'" *Commonwealth v. Rose*, 81 A.3d 123, 127 (Pa.Super. 2013), *allowance of appeal granted on other ground*, 95 A.3d 274 (Pa. 2014) (emphases removed). In performing this examination, we keep in mind that "[a] constitution is made, not particularly for the inspection of lawyers, but for the inspection of the million, that they may read and discern in it their rights and their duties; and it is consequently expressed in the terms that are most familiar to them." *Monongahela Navigation Co. v. Coons*, 6 Watts & Serg. 101, 114 (Pa. 1843).

Thus, we construe words in their plain and natural meaning, unless the words themselves denote a technical sense. *Id*. "Concomitantly, a fundamental precept in interpreting our constitution is that the language 'must be interpreted in its popular sense, as understood by the people when they voted on its adoption. Our ultimate touchstone is the actual language of the Constitution itself.'" *Rose*, *supra* at 127 (quoting *Stilp v.*

*(Footnote Continued)* ————————————————

face[.]" Pa.Const. Art. 9, § 9 (1790). The 1790 language was amended in 2003 to its current formulation.

*Commonwealth*, 905 A.2d 918, 939 (Pa. 2006)). In short, we consider "the original public meaning of the text at issue, giving due regard to both its spirit and the intent of the framers of the clause." *Rose*, *supra* at 127.

At the time of the ratification of the early Pennsylvania Constitutions, preliminary hearings were held, but not constitutionally mandated. *See e.g. Commonwealth v. O'Brien*, 124 A.2d 666, 669-671 (Pa.Super. 1956) (discussing the Marian bail and committal statutes, which were in force in Pennsylvania following the Declaration of Independence, and the history of preliminary hearings). Preliminary hearings began in England to prevent justices of the peace from indiscriminately releasing persons arrested for a crime. *See id*. The initial purpose of early English preliminary hearings was also for purposes of inquisition. That is, the justice of the peace would examine the felony suspect and certify the results of that examination for the court. *Id*. at 670; *see also Crawford v. Washington*, 124 S.Ct. 1354 (2004). Information gleaned from these proceedings subsequently came to be used in criminal trials, causing "frequent demands by the prisoner to have his 'accusers,' *i.e.* the witnesses against him, brought before him face to face." *Crawford*, *supra* at 1359 (quoting 1 J. Stephen, History of the Criminal Law of England 326 (1883)).

"Through a series of statutory and judicial reforms, English law developed a right of confrontation that limited these abuses. For example, treason statutes required witnesses to confront the accused 'face to face' at

his arraignment." **Crawford**, **supra** at 1361. Nonetheless, it was not until 1848 that English statutory law permitted an accused to confront or call witnesses during a preliminary hearing proceeding. **See** Gary L. Anderson, *The Preliminary Hearing—Better Alternatives or More of the Same?*, Missouri L.Rev. Vol. 35, Issue 3, Summer 1970, at 284 n.13 (citing 1 W. Holdsworth, History of English Law, 297 (5th Ed. 1931)) (hereinafter, "Anderson, *The Preliminary Hearing*").[3]

Early American preliminary hearings, it appears, were not inquisitorial of the accused due to the prohibition against self-incrimination. **See** Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 750 n.574 (1999); **see also** Anderson, *The Preliminary Hearing*, at 285 n.15; **compare Ex Parte Schultz** 1841 WL 3999, *3 (Pa. 1841) ("In England, and perhaps in Pennsylvania, justices of the peace have authority, in certain cases, to take inquisitions by the examination of witnesses[.]").

Rather, a committing magistrate was limited to determining whether a crime was committed and whether the defendant was the culprit. **See** 5 Tucker's Blackstone, 296 (Philadelphia, 1803) ("The justice, before whom

---

[3] It should be noted that English case law had, by 1791, applied a cross-examination rule to testimony before a justice of the peace in felony cases for purposes of usage at trial. **See Crawford v. Washington**, 124 S.Ct. 1354, 1361 (2004).

such prisoner is brought, is bound immediately to examine the circumstances of the crime alleged . . . . If upon this inquiry it manifestly appears, either that no such crime was committed, or that the suspicion entertained of the prisoner was wholly groundless, in such cases only it is lawful totally to discharge him. Otherwise he must either be committed to prison or give bail[.]").

The typical practice at the time of the founding was for an affiant to appear before a justice of the peace and be placed under oath. *See* U.S.Const. Am. IV; Pa.Const. Chapt. 1, § 10 (1776); Pa.Const. Art. 9, § 10 (1790); William Waller Hening, The New Virginia Justice, 597 (Richmond, 2nd ed. 1810). Affiants were not ordinarily law enforcement officials, but the victims. *See* Hening, *supra* at 80, 156, 161, 474 (providing sample warrants for assault, burglary, arson, and rape in Virginia). The justice of the peace would then determine if probable cause existed and issue a warrant. *Id*. at 76, 80, 208; *see also Commonwealth v. Green*, 17 A. 878, 879 (Pa. 1889) (discussing later 19th century Pennsylvania practice). A constable or sheriff would then be charged with placing the suspect under arrest. Hening, *supra* at 72. Upon arresting the accused, the constable would bring the suspect before a magistrate or justice of the peace who would commit him to prison, provide for bail, or discharge the individual if there was no probable cause to believe the accused committed the crime. *Gerstein*, *supra* at 114 (citing 2 M. Hale, Pleas of the Crown, 77, 81, 95,

121 (1736); 2 W. Hawkins, Pleas of the Crown, 116-117 (4th ed. 1762));
**Green**, **supra**.

A prisoner could seek relief via *habeas corpus* if he believed he was being detained unlawfully. **See Ex Parte Bollman**, 4 Cranch 75 (1807). If not granted the writ, a grand jury of the accused's peers would determine whether sufficient probable cause existed to warrant the case proceeding to a jury trial. If the grand jury so concluded, a true bill would issue and the defendant would then elect to go to trial or admit to the crimes.

The Pennsylvania legislature's first significant foray into governing preliminary hearings did not occur until 1915. That statute declared,

> Hereafter, upon a preliminary hearing before a magistrate for the purpose of determining whether a person charged with any crime or misdemeanor against the laws, except murder, manslaughter, arson, rape, mayhem, sodomy, buggery, robbery, or burglary, ought to be committed for trial, the person accused, and all persons on behalf of the person accused, shall be heard if the person accused shall so demand.

Act of May 14, 1915, P.L. 499, 42 P.S. § 1080 (as cited by **O'Brien**, **supra** at 671). Thus, relative to serious crimes outlined, an accused did not have a right to be heard or to confront witnesses.[4] **See O'Brien**, **supra** at 671.

_____

[4] As of 1930, no state even mandated appointment of counsel for such a preliminary hearing. Gary L. Anderson, *The Preliminary Hearing—Better Alternatives or More of the Same?*, Missouri L.Rev. Vol. 35, Issue 3, Summer 1970, at 285 n.19. Concomitantly, fifteen states in 1930 required confrontation of the witness and authorized cross-examination. **Id**. at 286 n.22. That number had risen to forty-two by 1969, with three of the eight

*(Footnote Continued Next Page)*

Indeed, the **O'Brien** Court held that a defendant "has no constitutional right to face his accusers *at a preliminary hearing*." **Id**. at 674 (italics in original); **see also Commonwealth v. Burger**, 171 A.2d 599, 602 (Pa.Super. 1961) ("The defendant is not entitled, at a preliminary hearing, to be confronted with all the Commonwealth witnesses and evidence.").

Pursuant to Pa.R.Crim.P. 542(C), a defendant at a preliminary hearing is entitled to counsel, to cross-examine witnesses, inspect physical evidence, call non-character witnesses, and present his own evidence.  Hence, the law of the land in Pennsylvania provides a limited rule-based right to confront witnesses at the preliminary hearing level.

In **Verbonitz**, **supra**, a majority of justices agreed that hearsay evidence alone was insufficient to establish a *prima facie* case at a

*(Footnote Continued)* ————————

remaining states requiring witnesses to be examined in the presence of the suspect.  **Id**.  Interestingly, by 1969, one year before the United States Supreme Court in **Coleman v. Alabama**, 90 S.Ct. 1999 (1970), held that counsel was required at a preliminary hearing, all but three states permitted an accused to have counsel.  Anderson, *The Preliminary Hearing*, **supra** at 285 n.18. The Supreme Court in **Coleman v. Alabama**, 90 S.Ct. 1999 (1970), determined that a preliminary hearing is a "critical stage" of the criminal prosecution and that counsel was therefore required.  The dissent by Chief Justice Burger agreed that, as a policy matter, counsel should be afforded at such a hearing, but set forth that almost two centuries of American practice refuted that it was constitutionally mandated.  He opined that, at the time of ratification of the federal constitution, the words "criminal prosecution" did not include a preliminary hearing.  **Id**. at 2010-2011 (Burger, C.J., dissenting).

preliminary hearing. Three justices based their rationale on a constitutional confrontation right, whereas two justices grounded their decision on due process.[5] As noted, Appellant has not forwarded a due process argument.

In **Verbonitz**, police arrested the defendant and charged him with statutory rape, corruption of a minor, and endangering the welfare of a child. The victim was a seven-year-old-child. At the preliminary hearing, the victim did not testify. The Commonwealth presented the victim's testimony through the investigating police officer. The defendant, Buchanan, objected, but the objection was overruled. The Commonwealth did not present any other evidence. The district justice bound the case over for trial.

Buchanan filed a writ of *habeas corpus* and the Commonwealth submitted the transcript of the preliminary hearing as the only evidence to be considered. The trial court denied the motion and declined to certify the case for purposes of permission to appeal an interlocutory order. Buchanan sought review with the Pennsylvania Supreme Court, which transferred the

_____

[5] Justice Larsen, joined by Justices Zappala and Papadakos, held that there was a constitutional right to confrontation at a preliminary hearing. Justice Flaherty, joined by Justice Cappy, opined that it was a violation of due process to allow only hearsay evidence to satisfy the Commonwealth's low burden of proof at a preliminary hearing. Chief Justice Nix and Justice McDermott dissented, both disagreeing with the plurality that a constitutional right to confrontation existed at a preliminary hearing.

case to this Court. After this Court denied his petition for review, our Supreme Court granted *allocatur*.

The plurality opinion in **Verbonitz** opined that in order to establish a *prima facie* case, "the Commonwealth must produce legally competent evidence, **Commonwealth v. Shain**, 493 Pa. 360, 426 A.2d 589 (1981), which demonstrates the existence of each of the material elements of the crime charged and legally competent evidence to demonstrate the existence of facts which connect the accused to the crime charged." **Verbonitz**, **supra** at 174.[6] The lead opinion continued that the evidence in question was inadmissible hearsay and therefore not legally competent evidence.

The plurality asserted, "[a]dditionally, a criminal defendant has a right to confront and cross-examine the witnesses against him: this right being secured by the United States Constitution; the Pennsylvania Constitution; and the Pennsylvania Rules of Criminal Procedure." **Id**. (footnotes omitted). In support, it relied on **Coleman**, **supra** and **Gerstein**, **supra**. The plurality concluded that because a preliminary hearing is a critical stage of a criminal proceeding, and **Gerstein** inferred a right to confront witnesses at such a hearing, the United States Constitution guaranteed a right to confront

_____

[6] The citation to **Commonwealth v. Shain**, 426 A.2d 589 (Pa. 1981), is somewhat curious because its reference to legally competent evidence therein pertained to trial. **Shain** had no bearing on a preliminary hearing proceeding.

witnesses at a preliminary hearing. It also construed the term "criminal prosecutions" in the Pennsylvania Constitution as encompassing a preliminary hearing, thus providing for a right to confront witnesses. Since the defendant was not afforded an opportunity to cross-examine the child victim, it discharged the defendant. The **Verbonitz** Court undertook no significant detailed confrontation clause analysis.

Justice Flaherty in his concurring opinion agreed with the plurality that the defendant should be discharged. However, he reasoned that this was required by due process. Relying on one of his own prior concurring decisions, he set forth, "fundamental due process requires that no adjudication be based solely on hearsay evidence." **Verbonitz**, **supra** at 176 (Flaherty, J., concurring). He concluded that because the hearsay statement would not have been admissible at trial, and it was the only evidence introduced at the preliminary hearing, Buchanan was entitled to be discharged.

The comment to Rule 542 recognizes the tension between the rule and **Verbonitz** decision. That case, nonetheless, is not binding and is valuable only insofar as its rationale can be found persuasive. The same is true of the United States Supreme Court decision in **Gerstein**, **supra** as it relates to the present issue. In **Gerstein**, the question before the High Court was whether the Fourth Amendment required a "judicial determination of probable cause for pretrial restraint of liberty." **Gerstein**, **supra** at 105.

The case arose out of Florida. Under Florida procedure, the defendants were arrested and charged by criminal information. At the time, Florida law permitted a prosecutor to charge an individual with a crime via criminal information without a prior preliminary hearing. Statutory law and case law in Florida also combined to allow a person to be "detained for a substantial period solely on the decision of a prosecutor." *Id*. at 106.

The ***Gerstein*** Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id*. at 114. In *dicta*, the Court added that where a state uses a full preliminary hearing, similar to Pennsylvania's current procedure, to meet this probable cause standard, "[t]he importance of the issue to both the State and the accused justifies the presentation of witnesses and full exploration of their testimony on cross-examination." *Id*. at 120. The High Court added that, where the probable cause determination was made at a less than full preliminary hearing,

> This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause.

*Id*. at 122. ***Gerstein***, therefore, suggests but does not hold that a federal constitutional right to confront witnesses exists at the type of preliminary hearing used in Pennsylvania.

After review of the historical underpinnings of the preliminary hearing, the reasons for the creation of the Pennsylvania and federal confrontation clauses, and the original public meaning of the respective confrontation clauses, we find that an accused does not have the right to confront the witnesses against him at his preliminary hearing under those provisions.[7] *See Tyler, supra*; *O'Brien*, *supra*; *Burger*, *supra*; *see also McCullough v. Commonwealth*, 67 Pa. 30 (1870) (asserting that the right to meet witnesses face-to-face attached after a true bill was found by a grand jury); *compare also Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality opinion) ("[T]he right to confrontation is a trial right."); *Barber v. Page*, 390 U.S. 719, 725 (1968); ("The right to confrontation is basically a trial right."); *cf. Crawford*, *supra* at 68 (Confrontation Clause precludes introduction at trial of testimony from a preliminary hearing unless there was a prior opportunity to cross-examine the original declarant of the statements).[8]

---

[7] Since Appellant does not argue the position, we do not decide the distinct question of whether there exists a constitutional due process right to confront witnesses because Rule 542(C) authorizes limited confrontation rights.

[8] Our conclusion is consistent with a large body of other precedent. *State v. Lopez*, 314 P.3d 236 (N.M. 2013); *State v. Randolph*, 933 A.2d 1158, 1191 n.15 (Conn. 2007); *Blevins v. Tihonovich*, 728 P.2d 732, 734 (Colo. 1986); *State v. Sherry*, 667 P.2d 367, 376 (Kan. 1983) ("There is no constitutional right to allow the accused to confront witnesses against him at

*(Footnote Continued Next Page)*

We also note that it is presumed that a state legislature, when enacting law, acts constitutionally. **Commonwealth v. Swinehart**, 664 A.2d 957 (Pa. 1995). We agree with the Commonwealth that no less of a standard applies when it is our High Court that promulgates a rule of procedure.[9] This is not to say that the Pennsylvania Supreme Court could not pass an unconstitutional rule; only that there is a strong presumption against it.

We acknowledge that one of the primary harms sought to be remedied by the federal and Pennsylvania confrontation clause was the English practice of using statements taken pre-trial to establish guilt at trial without affording the accused an opportunity to cross-examine the witness. Thus, the very reason for the constitutional right was because an accused could not confront those witnesses during the earlier proceedings. The constitutional right, therefore, offered the protection of ensuring the right to

_(Footnote Continued)_ _____

the preliminary hearing."); **Sheriff v. Witzenburg**, 145 P.3d 1002, 1005 (Nev. 2006); **State v. Woinarowicz**, 720 N.W.2d 635, 641 (N.D. 2006) ("right to confrontation is a trial right, which does not apply to pretrial suppression hearings"); **State v. Jones**, 259 S.E.2d 120, 122 (S.C. 1979); **Wilson v. State**, 655 P.2d 1246, 1250 (Wyo. 1982) ("The use of hearsay testimony to establish probable cause at a preliminary hearing is practically a universally approved practice.").

[9] The Pennsylvania Supreme Court's power to prescribe rules is limited to those that do not abridge, enlarge, or modify substantive rights. Pa.Const. Art. V, § 10(c). Appellant does not allege that the rule abridges any other substantive right than his confrontation rights.

confront the witness at his trial. Appellant has not provided, nor have we been able to uncover, any binding precedent that constitutionally mandates an accused be afforded the opportunity to confront and cross-examine a witness against him at a preliminary hearing based on the federal or state confrontation clause.

Moreover, at the time of the ratification of the federal and early Pennsylvania Constitutions, the phrase "criminal prosecutions" did not encompass a preliminary hearing. It is beyond cavil that an accused did not have a constitutional right to confront witnesses at a grand jury proceeding, which occurred after the preliminary hearing. *See McCullough*, *supra*; *cf. Respublica v. Shaffer*, 1 U.S. 236 (Pa.Ct. Oyer and Terminer 1788) (Chief Justice McKean opining that a defendant does not have right to call witnesses before a grand jury). A grand jury was considered a bulwark of liberty by those who framed the early constitutions, but it was not considered part of the criminal prosecution for purposes of the Sixth Amendment. It would be incongruous to find that the phrase "criminal prosecution" did not encompass the constitutionally-required grand jury proceeding, but did include the earlier non-constitutionally-mandated preliminary hearing proceeding.

In *Ex Parte Bollman*, *supra*, Chief Justice John Marshall, writing while on circuit, permitted the use of an affidavit during a pre-trial proceeding. He opined,

> To decide that an affidavit made before one magistrate would not justify a commitment by another, might in many cases be productive of great inconvenience, and does not appear susceptible of abuse if the verity of the certificate be established. Such an affidavit seems admissible on the principle that before the accused is put upon his trial all the proceedings are *ex parte*.

**Bollman**, **supra** at 129-130. That same year, Justice Bushrod Washington, also on circuit, declared that cross-examination of a prosecution's witness at a bind-over proceeding was "certainly improper." **United States v. White**, 28 F. Cas. 588, 588 (C.C. Pa. 1807); **see also In re Bates**, 2 F.Cas. 1015, 1018 (D.C.S.C. 1858) ("[T]hese constitutional rights, which are supposed to be invaded by this construction, are rights which are not contemplated by the constitution in connection with preliminary proceedings; that the privilege of confronting the witness is a privilege which pertains to the trial in court; that it does not extend to all periods in the proceeding, is manifest in the fact that it cannot be claimed before the grand jury: a period, when, if allowed, it would be far more available for the accused than in the preliminary proceedings before the magistrate.").

Hence, the probable intent of the makers of the respective confrontation clauses and the original meaning placed on the text by those who ratified the provisions in question did not constitutionally guarantee a right to confront witnesses before trial. Appellant's confrontation clause arguments, therefore, fail. We add that we are cognizant that there does appear to be some tension between Rule 542(C) and 542(E) since

defendants do have a rule-based right to confront witnesses and call witnesses on their own behalf to refute the Commonwealth's *prima facie* evidence. Appellant has not explored this issue and, as noted, did not develop any argument relative to the district justice's decision not to permit him to call Trooper Trotta or Trooper Gingerich. Thus, we do not opine on those matters. For all of the aforementioned reasons, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2015