J-S54015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LATY JEROME ARRINGTON | : | |
| | : | |
| Appellant | : | No. 913 MDA 2019 |

Appeals from the Judgment of Sentence Entered February 27, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No:  CP-28-CR-0001821-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LATY JEROME ARRINGTON | : | |
| | : | |
| Appellant | : | No. 1658 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 27, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0002094-2017

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:          **FILED: APRIL 29, 2020**

Laty Jerome Arrington appeals from the February 27, 2019 judgment of

sentence, which was imposed following his convictions for manufacture or

delivery of a controlled substance (fentanyl) and possession with intent to deliver a controlled substance (fentanyl).[1]  After careful review, we affirm.

Appellant's convictions stem from the February 22, 2017 death of Dwayne Thomas from a fentanyl and alcohol overdose.  During the police investigation into the death of Mr. Thomas, Trooper Jeremy Holderbaum of the Pennsylvania State Police reviewed the victim's cell phone.  There were drug-related messages between the victim and Nathan Mills.  The police obtained a warrant for the social media accounts of Mills, and his Facebook messages indicated that prior to the victim's death, Nathan Mills contacted an identified woman to obtain heroin.  Nathan Mills informed police that he bought what he thought was heroin from the woman, and the police located her.  The woman confirmed to police that she sold the substance to Nathan Mills, and maintained that she thought it was heroin.  She told police that her supplier was "Chris Tate," and that she thought she could make another purchase from this individual.  She agreed to participate in a controlled buy in return for favorable treatment.  In the presence of police, the woman

_____

[1] The appeal at No. 914 MDA 2019 (docket number 2094-2017 possession with intent to deliver), was quashed as untimely.  Appellant filed a timely PCRA petition and obtained reinstatement of his direct appeal rights by order dated October 2, 2019.  He filed a *nunc pro tunc* appeal, which we designated as No. 1658 MDA 2019.  By order of March 16, 2020, that appeal was transferred to this Panel and consolidated with his prior appeal at 913 MDA 2019.  The appeals present identical questions and briefs.

(hereinafter "the CI") texted "Chris Tate" to make arrangements to purchase heroin. They were to meet at the Giant Grocery Store.

Prior to the planned meeting on July 5, 2017, police searched the CI's belongings and vehicle. They did not search her undergarments as there was no female police officer available. The CI did not receive currency for the controlled buy as she maintained that she owed money to Appellant and would use her own money. A video recorder was placed in the CI's vehicle. When the CI was *en route* to the arranged meeting place, she received a text from the seller changing the location to Michael's, a craft store nearby. Police set up surveillance at the new location. Video depicted "Chris Tate," later identified as Appellant, pulling up in his vehicle, getting into the CI's vehicle, discussing his next stops with her, and making some type of exchange with her prior to exiting her vehicle.

After the exchange, the CI met with police and identified Appellant as the "Chris Tate" who previously sold her what she believed to be heroin. She turned over to police ten bags of the substance she purchased.[2] The substance was tested and determined to be fentanyl, not heroin.

The CI participated in another controlled buy on July 10, 2017. By this time, warrants were outstanding for Appellant's arrest in Maryland and in Pennsylvania for the earlier controlled buy. After arranging the meeting,

---

[2] Unknown to police, the CI concealed two bags of controlled substances that she purchased in her undergarments.

- 3 -

Appellant instructed the CI to get him a hotel room in the Country Inn Suites across from Cluggy's, a family amusement center in Chambersburg. When Appellant was getting off the highway, he texted the CI. She told him that she had forgotten her identification and that he should wait for her in Cluggy's. Uniformed troopers approached him at that location and placed him under arrest.

Appellant's belongings contained two cell phones, approximately $1600 in cash, and a fake Florida identification card bearing his picture and pseudonym of Chris Tate. He was also in possession of twenty-six grams of fentanyl, the rough equivalent of more than one thousand doses.

Appellant was arrested and charged with the following crimes in three separate criminal informations. At docket number 1820-2017, Appellant was charged with drug delivery resulting in death for his involvement in the death of Mr. Thomas on February 22, 2017. He was charged with delivery of a controlled substance (fentanyl) at docket number 1821-2017 for his sale to the CI on July 5, 2017. The possession of a controlled substance with intent to deliver charge at docket number 2094-2017 related to the events surrounding his arrest on July 10, 2017.

The Commonwealth provided notice to Appellant that it intended to have a joint trial on the drug delivery resulting in death case at docket number 1820-2017, and the delivery of a controlled substance case at docket number 1821-2017. When Appellant moved to sever the cases, the Commonwealth

moved to join the third case, the charge of possession with intent to deliver at docket number 2094-2017. The trial court granted the Commonwealth's motion after hearing argument and considering briefs.

Following a three-day jury trial on all three cases, the jury acquitted Appellant of the charge of drug delivery resulting in the death of Mr. Thomas, but convicted him of delivery at docket number 1821-2017 and possession with intent to deliver at docket number 2094-2017. On February 27, 2019, the court sentenced Appellant to twenty-four to 120 months of incarceration on the delivery conviction, and a consecutive term of ninety-six to 192 months of imprisonment on the possession conviction. Appellant filed a post-sentence motion challenging the weight of the evidence at docket number 1821-2017 only; relief was denied.

Appellant filed two separate appeals from his judgment of sentence at the two docket numbers.[3] The appeals were assigned numbers 913 MDA 2019 and 914 MDA 2019. The appeal filed at 914 MDA 2019, involving the conviction for possession with intent to deliver, was quashed as untimely.[4] It

_____

[3] Appellant correctly filed a separate notice of appeal at each docket number in accordance with the Supreme Court's directive in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018).

[4] Appellant's post-sentence motion bore only docket number 1821-2017. Consequently, his notice of appeal at docket number 2094-2017, filed on June 4, 2019, was untimely. We issued a rule to show cause why the appeal should not be quashed. Appellant, through counsel, expressed his belief that since the cases would be consolidated on appeal, the notices of appeal should be

was subsequently reinstated through the PCRA, assigned No. 1658 MDA 2019, and is consolidated for disposition herein with the appeal at No. 913 MDA 2019.

Both Appellant and the trial court complied with Pa.R.A.P. 1925, and the matter is ripe for our review. Appellant presents five issues:

> 1) Was [Appellant's] conviction in 1821 of 2017 against the weight of the evidence, and the sufficiency of the evidence?
>
> 2) Did the Court err by refusing [Appellant's] motion to sever his cases and to allow the jury to hear the two cases to which an appeal is filed (drug delivery and possession with intent) together with a drug delivery resulting in death case?
>
> 3) Did the Court err by not granting [Appellant's] motion to dismiss presented in the nature of a Habeas Motion?
>
> 4) Did the trial court demonstrate its bias against [Appellant] by the nature of a sentence which clearly penalizes [him] for charges for which he was not convicted?
>
> 5) Was the Court biased against [Appellant] by, per the claim of [Appellant], the Court referring to [Appellant] as a "Monster" at sentencing?

Appellant's brief at 5.

Appellant's first issue purports to be both a challenge to the sufficiency and the weight of the evidence of his conviction at docket number 1821-2017,

---

filed together. Appellant also filed an application seeking to proceed *nunc pro tunc* at No. 914. We denied the application and quashed the appeal as untimely on August 2, 2019, because we cannot extend the time for filing an appeal. However, Appellant availed himself of relief under the PCRA and obtained reinstatement of his direct appeal rights.

for the manufacture, delivery or possession with intent to manufacture or deliver a controlled substance. Appellant devotes four sentences to his sufficiency claim in which he merely recites the legal standard.[5] Preliminarily, he fails to identify what element of the offense was not sufficiently proven.[6] *See Commonwealth v. Manley*, 985 A.2d 256, 261-262 (Pa.Super. 2009) (holding that the failure to identify which element of an offense was not proven waives a sufficiency claim). Furthermore, he neglects to develop his argument and direct us to authorities that support his contention that the evidence was insufficient to sustain his conviction. *See Commonwealth v. Spotz*, 18 A.3d 244, 326 (Pa. 2011) (finding waiver for "utter lack of development" where Appellant made general assertions and failed to present reasoned and

---

[5] In support of his sufficiency claim, Appellant merely referenced the arguments he had advanced in support of his weight claim, thus conflating two distinct legal challenges. *See* Appellant's brief at 11 ("Arrington argues that for the reasons set forth above, [in support of his challenge to weight of the evidence,] this Court should rule that evidence was insufficient to convict him of delivery of a controlled substance."). Pennsylvania law is well settled that "a challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, 'but questions which evidence is to be believed.'" *Commonwealth v. Richard*, 150 A.3d 504, 516 (Pa.Super. 2016) (quoting *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super. 2006).

[6] Appellant was convicted at No. 1821 of delivery of a Schedule II controlled substance (fentanyl), in violation of 35 P.S. § 780-113(a)(30). In order to be found guilty of that offense, the Commonwealth was required to prove beyond a reasonable doubt that Appellant knowingly made an actual or constructive delivery of a controlled substance to another person without legal authority to do so. *Commonwealth v. Murphy*, 844 A.2d 1228, 1233 (Pa. 2004). Appellant did not specify which element was not proven.

developed arguments supported with citations to relevant legal authority). Appellant's lack of developed argument precludes meaningful review of his sufficiency claim, and for this reason, we find it waived. **Accord Estate of Whitley**, 50 A.3d 203, 209 (Pa.Super. 2012) (requiring appellate brief to include a pertinent discussion of the issue raised and citation to pertinent authorities, or suffer waiver); **Lackner v. Glosser**, 892 A.2d 21 (Pa.Super. 2006) (explaining arguments that are not properly developed are waived on appeal as meaningful review is precluded).

In contrast, Appellant devotes considerable argument to his claim that the verdict was against the weight of the evidence. Such a claim is addressed in the first instance to the discretion of the trial court. As we explained in **Commonwealth v. Stokes**, 78 A.3d 644, 650 (Pa.Super. 2013):

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Id**. In short, a verdict should not be overturned on this basis unless "it is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Cash**, 137 A.3d 1262, 1270 (Pa. 2016).

Our standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted) (emphasis in original).

Appellant maintained at trial that food stamps were exchanged, not drugs. However, the CI refuted that claim, testifying that while she had exchanged food stamps with Appellant on occasion, this was a drug transaction. In its opinion denying Appellant's post-sentence motion, the trial court thoroughly discussed the weight of the evidence. It expressly rejected Appellant's food stamp explanation and placed greater weight on the testimony of the CI that she routinely purchased what she believed was heroin from Appellant, and that she did not give him food stamps on this occasion. *See* Trial Court Opinion, 5/9/19, at 8-9. The court found it significant that "no food stamps were recovered from [the CI] at any time before or after the controlled buy." *Id*. The court also credited the CI's testimony that no currency was supplied by the police for the controlled buy because she used her own money that she owed Appellant. *Id*. at 9. Moreover, the court found that Appellant's food stamp story failed to account for the CI's "credible

testimony that the controlled buy was a drug transaction." *Id*. In conclusion, the trial court stated, "[t]he jury's credibility determinations and ultimate verdict do not shock our sense of justice." *Id*.

On appeal, Appellant points out the following facts: (1) the arresting officer did not search the CI's undergarments; (2) she secreted two packets of controlled substances in her brassiere; and (3) the CI admitted that she could have brought the drugs to the controlled buy. Appellant's brief at 8. Additionally, Appellant contends that the video of the transaction did not depict the delivery of drugs, and the recorded discussion was not about drugs.

The foregoing information about the CI was placed before the jury. Furthermore, the jury and the court saw and heard the video. Appellant is merely rehashing the arguments he made at trial, which the jury rejected, as was its prerogative. *See Commonwealth v. Flor*, 998 A.2d 606, 626 (Pa. 2010) (reaffirming that the jury is entitled "to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder"). We find no abuse of discretion on the part of the trial court in concluding that the verdict was not against the weight of the evidence, and no relief is due on that basis.

Appellant's second issue is that the trial court erred in refusing to sever the delivery case at docket number 1821-2017 from the PWID charge at docket number 2094-2017, as well as the drug delivery resulting in death charge filed at docket number 1820-2017. He filed a motion to sever in which

he alleged that he would be prejudiced by a joint trial as his defenses in the cases were different and he could not selectively exercise his right to testify. He maintained that joinder would result in the admission of prejudicial prior and subsequent bad acts evidence, as evidence admissible in one action would come in where it was inadmissible in the other. The trial court denied the motion.

Whether separate criminal informations should be consolidated for trial is within the sole discretion of the trial court. We will reverse only for "a manifest abuse of discretion or prejudice and clear injustice to the defendant." ***Commonwealth v. Robinson***, 864 A.2d 460, 481 (Pa. 2004). It is the appellant's burden to establish prejudice. ***Commonwealth v. Melendez— Rodriguez***, 856 A.2d 1278, 1282 (Pa.Super. 2004) (*en banc*).

Pa.R.Crim.P. 582 and 583 govern joinder and severance. Rule 582 provides that offenses charged in separate indictments or informations, as herein, may be tried together if

> (a)  the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
> (b)  the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

Rule 583 permits courts to order separate trials if joinder of offenses for trial would prejudice a party. Prejudice, for purposes of this rule, "must be greater than the general prejudice any defendant suffers when the

Commonwealth's evidence links him to a crime." ***Commonwealth v. Ferguson***, 107 A.3d 206, 210 (Pa.Super. 2015) (quoting ***Commonwealth v. Lauro***, 819 A.2d 100, 107 (Pa.Super. 2003). Rather, it is prejudice that "would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." ***Id***.

Appellant claims that joinder was inappropriate under Rule 582 as the evidence of each of the offenses was not admissible in separate trials on those offenses, and furthermore, the jury could not separate them. Moreover, he contends that the offenses were not based on the same transaction. Appellant claims that he was prejudiced by the joinder as it had a chilling effect on his constitutional right to testify in his own defense at trial. He argues that he may have chosen to testify in one of the cases, and not in another, an option that joinder precluded.

The Commonwealth maintained that evidence of each offense was properly admissible in separate trials for each of the other offenses as they were related and formed a logical narrative. It was the Commonwealth's theory that Appellant supplied fentanyl to the CI, who provided it to Appellant's co-defendant Nathan Mills. Mills provided it to the victim, who died of an overdose. In investigating the fatal overdose case, the Commonwealth obtained a pseudonym of the individual thought to have supplied the fentanyl. The controlled buy at docket number 1821-2017 was

arranged months later to permit police to ascertain the real identity of "Chris Tate." The July 10, 2017 controlled buy was arranged to facilitate Appellant's arrest pursuant to a warrant. At the time of his arrest, Appellant had controlled substances in his possession. The Commonwealth maintained that the jury could keep each offense separate, and that Appellant would not be unfairly prejudiced by joinder.

In denying Appellant's motion to sever, and granting the Commonwealth's motion to consolidate, the trial court reasoned that evidence of each offense was admissible in a separate trial for the others to prove identity and the chain of events that became the history of the case. *See* Pa.R.E. 404(b)(2) (providing that evidence of another crime may be admissible to prove, *inter alia*, opportunity, absence of mistake); *see also* *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa.Super. 2012) (admissible under the *res gestae* exception, defined as a "situation where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development").

In the trial court's view, "the evidence of each of the offenses involved similar fentanyl arrangements between [Appellant] and the CI, and formed a complete story by identifying Appellant as seller 'Chris Tate,'" and thus, "the evidence of each of the offenses is admissible in a separate trial for the others." Trial Court Opinion, 7/3/18, at 5. Moreover, the court found the evidence capable of separation by the jury to avoid danger of confusion. *Id*.

It reasoned that the jury could separate the first drug transaction involving co-defendant Mills and resulting in the fatal overdose from the second transaction, a controlled buy involving the CI several months later. *Id*. at 6. Finally, the third offense involved Appellant's possession of fentanyl when he was arrested. The trial court noted that the jury, in fact, was capable of separating the evidence related to the two charges as indicated by its not guilty verdict on the drug delivery resulting in death charge. Trial Court Opinion, 6/12/19, at 12 (citing **Commonwealth v. Cole**, 167 A.3d 49, 57 (Pa.Super. 2016) (concluding from acquittal on several counts "that the jury clearly was able to parse the evidence involved in each individual case").

We agree with the trial court that the evidence of each of the offenses would have been admissible at separate trials for the others. Furthermore, the evidence related to the drug delivery resulting in death was relevant to prove identity and provide the sequence of events leading up to the controlled buy and Appellant's arrest. The jury was capable of separating the evidence of the three distinct offenses.

As to prejudice, the court rejected Appellant's notion that the evidence of the other crimes only served to show his propensity to commit crimes. The court found, "[a]t a minimum, the proffered evidence establishes identity and forms a complete story." *Id*. at 6. Moreover, his prior record would only be admissible if he chose to testify at trial. We find no manifest abuse of discretion on the part of the trial court.

Appellant's third issue involves the denial of his *habeas* motion. Appellant argues that the Commonwealth failed to meet its burden of offering *prima facie* evidence at the preliminary hearing of each of the elements of the crime charged, or establish probable cause to believe that Appellant committed the crime. **See** Appellant's brief at 16 (citing **Commonwealth v. Ricker**, 120 A.3d 349 (Pa.Super. 2015); **Commonwealth v. McBride**, 595 A.2d 589 (Pa. 1991), and **Commonwealth v. Mullen**, 333 A.2d 755 (Pa. 1975)). According to Appellant, the failure to obtain a female police officer to conduct a thorough search of the CI's clothing prior to the buy, and the fact that, unknown to police, she secreted two bags of controlled substance in her undergarments, were grounds for dismissal of the charges.

It is well-settled that once a defendant has been convicted of an offense beyond a reasonable doubt, any defects regarding the sufficiency of the evidence adduced at a preliminary hearing are deemed harmless. **Commonwealth v. Wilson**, 172 A.3d 605, 610 (Pa.Super. 2017) (citing **Ricker**, **supra** at 353). Having been convicted of the delivery charge, Appellant cannot now challenge the denial of his pretrial *habeas corpus* motion. Hence, no request for relief can be entertained on this claim.

Appellant's fourth and fifth issues are challenges related to discretionary aspects of his sentence. He alleges that his sentence is the result of trial court bias, as demonstrated by the trial court's own words at sentencing. He maintains further that he was penalized for a crime for which he was acquitted,

and that the transcript was edited to remove the trial court's reference to him as a "monster."[7]   The Commonwealth counters that the discretionary sentencing claims are waived as Appellant did not challenge his sentence in a post-sentence motion, nor file a Rule 2119(f) statement with his appellate brief.

A defendant is not entitled to appellate review of discretionary aspects of sentencing as a matter of right.  In order to invoke appellate jurisdiction, the defendant must satisfy a four-part test: (1) file a timely notice of appeal; (2) preserve the issue at sentencing or in a motion to modify or reconsider sentence; (3) file a statement in his appellate brief pursuant to Rule 2119(f); and (4) present a substantial question.

_____

[7] By Appellant's own admission, he did not bring the "monster" comment to his attorney's attention until after his post-sentence motion was filed and after receipt of the sentencing transcript in which the comment does not appear. *See* Appellant's brief at 18.  Appellant subsequently alleged in his Rule 1925(b) concise statement that the sentencing transcript had been altered to delete the trial court's reference to him as a "monster."  Since Appellant was present and would have heard such a comment at sentencing, we fail to understand how the accuracy of the transcript had any bearing on Appellant's ability to raise the claim in a timely post-sentence motion.

In its June 12, 2019 Rule 1925(a) opinion, the trial court stated that Appellant did not address any objection to the trial court about the accuracy of the sentencing transcript.  While Appellant states in his brief that a hearing was held on this issue on July 25, 2019, and that he testified that he heard the "monster" comment, the certified record contains no mention of such a hearing.

Although Appellant filed timely notices of appeal from judgment of sentence at Nos. 1821-2017 and 2094-2017, he did not preserve his discretionary sentencing issue in a post-sentence motion, file a Rule 2119(f) statement, or indicate the nature of the substantial question presented under the Sentencing Code.[8]  Thus, he has failed to invoke appellate review of his discretionary sentencing claims, and we will not address them.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/29/2020

---

[8] Having reviewed the certified record in its entirety, we note the following. Prior to imposing a standard range sentence, the trial court refused the Commonwealth's request to assess the costs of the forensic pathologist and hear a victim impact statement from the family affected at docket number 1820-2017.  In doing so, the court stated, "I need to make very clear that the sentence I am imposing today on the two counts that the jury found Mr. Arrington guilty of I can only consider the facts and circumstances of those charges."  N.T. Sentencing Hearing, 2/27/19, at 4.